**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No.    21-cr-667 (FYP)** |
| | ) | |
| **MAHAILYA PRYER** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### INTRODUCTION

Ms. Pryer respectfully submits this memorandum in aid of sentencing and response to the government's memorandum. The government concludes its sentencing memorandum seeking one month in custody plus three years of probation. (Counsel notes that there seems to be some confusion as elsewhere in the sentencing memo the government asks for 2 months of incarceration.) Ms. Pryer asks the Court to sentence her to probation and objects to the government's request, whether it be for one month or two of incarceration. For all of the reasons noted below, a period of incarceration is not warranted under the facts in this case. Counsel also objects to a split sentence, understanding that this Court has already ruled on this issue in a similar case, but preserving that objection because the issue is on appeal before the D.C. Circuit.

### BACKGROUND

Ms. Pryer comes before this Court for sentencing having pleaded guilty to one count of parading, demonstrating or picketing in the United States Capital on January 6, 2021, a class B misdemeanor. She was arrested on October 4, 2021 and released on a personal recognizance bond, in which status she has remained.  She has been largely compliant with her release conditions, but as explained below, recently relapsed and checked herself into an in-patient drug

treatment facility. Notably, she immediately advised her pretrial services officer of her relapse and immediately recognized that she needed the assistance of an in-patient treatment program to get her back on her path to sobriety. While communications have been limited, counsel was able to reach her today and she is prepared to proceed to sentencing as scheduled.

Ms. Pryer has been cooperative with law enforcement. She completed her post-plea interview with law enforcement earlier this month and answered all of their questions.  She expressed an early desire to plead guilty and remains prepared to accept the consequences of her actions. She acknowledges the seriousness of her conduct and deeply regrets having gone into the U.S. Capital that day. Her efforts to explain her actions that day and describe how she perceived things as they were occurring, do not diminish her acknowledgement that what she did was wrong. She has never suggested that she acted under duress or that her actions were excusable. She was merely attempting to explain how she perceived the events of the day as they were happening. She has not viewed the videos in the case and thus was relying on her recollections of what transpired – she readily acknowledges that those recollections and perceptions may not match what really occurred. (See Exh. 1) She knows that she was part of what turned into a violent mob and regrets her part in that. However, as the Probation Office has noted in its recommendation, Ms. Pryer's culpability is minimal in contrast with those who vandalized or stole government property or assaulted or threatened law enforcement. She requests that the Court adopt the recommendation of the Probation Office and impose a probationary sentence.

## HISTORY AND CHARACTERISTICS OF MS. PRYER

Ms. Pryer is a 35 year old woman who has been a lifelong resident of Missouri. Her parents divorced when she was very young and her mother remarried. At that time, she resided with her father and his new family and was not treated well. She maintains a good relationship with her mother, and in fact, has recently given up her apartment and moved in with her mother to try to get her life back on track. She has children but they do not reside with her and she pays child support for one of them. She has struggled with drug addiction for many reasons and that is the primary reason she does not have custody of her children. She had been sober and was dealing with her addiction until she was served with legal papers recently with respect to one of her children. That event and her reaction to it caused her to relapse. To her credit, after she relapsed she immediately sought treatment and reported the situation to her pretrial services officer. She is now in a 30 day drug treatment program and is fully participating. In addition to her addiction, she also suffers from a mental health disorder, major depressive disorder. She recognizes the need for treatment and welcomes both substance abuse treatment and mental health treatment.

While Ms. Pryer is presently unemployed, she has a new job that she will be able to begin upon completion of her in patient drug treatment program.  She has a pattern of employment that suggests as long as she can remain sober, she will be able to remain employed. Ms. Pryer does have some criminal history, albeit fairly minor charges and dated charges. Additionally, it seems obvious that her prior encounters with law enforcement were largely related to the substance abuse issues she has struggled with.

## CIRCUMSTANCES OF THE OFFENSE

In January 2021, Ms. Pryer traveled to Washington D.C. with a few other individuals, including her codefendant, Ms. Hentschel to attend the Trump rally. She did not travel with weapons or even defensive gear. She had no intention of entering the Capitol building or violate the law. Unfortunately, after attending the rally, she walked toward the Capitol with the crowds and entered the building along with a surge of individuals. While inside the building, Ms. Pryer never engaged with law enforcement, nor did she damage or disrespect any property. She acknowledges that she witnessed altercations with officers, but has no clear recollections of precisely where or when those altercations occurred. She was in the building for less than 10 minutes and did not venture beyond the Rotunda. She has described that at the time, she felt like they had no choice at the precise moment when they entered, because they were part of a large crowd. However, she said this not to excuse her actions, but merely to explain her perceptions in the moment. In fact, at the same time she acknowledged that she knew she was not allowed to be there and continues to express her remorse for having entered the building at all. Unlike others who remained in the Capitol for longer periods of time, Ms. Pryer came in with a crowd of people, then within minutes, exited the building.

The government has provided photographs of the entrance when Ms. Pryer entered the Capitol. Those photographs depict rioters engaging with law enforcement, and Ms. Pryer is visible in the same screenshot. But she is not facing them and from her vantage point it is not clear that she saw in real time what we can now see on the video. But more importantly, she does not dispute her actions, accepts that violence occurred that day and was reprehensible, and accepts that her presence contributed to the overall melee. Her prior explanations of her behavior

4

are not inconsistent with this remorse. She was describing how she felt in the moment, her perceptions at that time, and her recollections nearly two years later. She never reviewed the video footage but accepted the characterizations described to her. She knows she was wrong, is remorseful for her involvement and will never repeat the conduct.

## A SENTENCE OF PROBATION WOULD BE APPROPRIATE IN THIS CASE

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range (not applicable here); (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).  In this case, a term of probation would meet all of the pertinent purposes of sentencing and would be appropriate given Ms. Pryer's history and characteristics.

Notably, Ms. Pryer did not engage in any violence or destruction of property nor did she come to D.C. prepared to do so. The government has suggested that that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, she would have been  charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive

and/or aggressive behavior. Without addressing all of the cases where sentences have been imposed, Counsel would point the Court to a few examples:  *United States v.Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Hernandez*, 21-CR-272 (TJK) (court imposed two months' home detention despite Hernandez shouting at police and scaling wall to gain access to Capitol).

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation.  In this case, there is no need for incapacitation, specific deterrence or rehabilitation, with the exception of the need for continued assistance with her substance abuse issues which can be most effectively given in the community.  Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that general deterrence has been served for those who would be deterred. Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by

these consequences, and they do exist, are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

Ms. Pryer committed no violent acts and destroyed no property.  She did not destroy property, steal property, commit violent acts, or encourage others to do so.  She did not engage in any pre-planning or coordination activities.  She brought no weapons or even defensive gear with her.  Another factor to consider is that Ms. Pryer accepted full responsibility for her actions. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Ms. Pryer has done.  This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.  Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Ms. Pryer's conduct was serious, probation remains an appropriate resolution as it is well within the range of sentences for similar conduct and would not result in disparity.  *See e.g., U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer*

*Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (probation imposed as requested by government); *United States v. Eliel Rosa*, Crim. No. 21-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, Crim. No. 21-155 (ABJ) (2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ)(18 months probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (Probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM) (12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months probation).

It is also important to note that many individuals who arguably committed more serious misconduct received lesser sentences than what the government suggests is appropriate in this case. While there are many, a few of note include:

- Robert Lyon who, according to the government breached the Senate Parlimentarian's office and aided in the trashing of that office, stole items therein, lied about his presence at the capitol, and remained in the Capitol and on the grounds for hours, *U.S. v. Robert Lyon, 21-161 (RBW)* (pleaded guilty to theft of government property and disorderly and disruptive conduct in the capitol, sentenced to 40 days);
- Emily Hernandez who, according to the government entered the crypt and the Speaker's suite and stole items, remained in the Capitol for nearly an hour, and remained on Capitol grounds displaying trophies even longer, *U.S. v. Emily Hernandez, 21-747 (JEB)* (pleaded guilty to entering and remaining in the capitol, a class A misdemeanor, sentenced to 30 days);
- Derek Jancart who, according to the government came prepared for violence with a gas mask, returned to the Capitol after seeing the violence on TV, penetrated the Capitol to the Speakers Office and beyond, scaled the wall of the Capitol with a bike rack, remained in the building for 40 minutes and expressed no remorse, *U.S. v. Derek Jancart, 21-148 (JEB)* (pleaded guilty to disorderly conduct in the capitol, sentenced to 45 days);
- Jordan Stotts, who, according to the government scaled the wall of the Capitol, stood face to face yelling at the police, showed no remorse, and posted on Facebook saying he would be back, *U.S. v. Stotts, 21-272 (TJK)* (pleaded guilty to parading and picketing, sentenced to probation with home detention);
- Bradley Rukstales, who, according to the government threw a chair at officers, resisted arrest and had to be subdued and taken to the ground by multiple officers to be arrested, *U.S. v. Rukstales, 21-CR-41 (CJN)* (pleaded guilty to parading and picketing, sentenced to 20 days);
- Felipe Marquez, who, according to the government brought a firearm into the district but left it in his car, entered the private office of a Senator which was ransacked, interfered with the police while in the Capitol*, U.S. v. Marquez*, 21-cr-136 (RC) (pleaded guilty to parading and picketing, sentenced to probation with home detention);
- Anthony Mariotto, who, according to the government entered the Senate Gallery, videotaped assaults on officers, attempted to open closed doors, *United States v. Mariotto*, 21-94 (RBW) (pleaded guilty to parading and picketing, sentenced to probation);
- Gracyn Courtright, who, according to the government entered the Senate floor, attempted to steal a members only sign, *U.S. v. Courtright*, 21-CR-72(CRC) (pleaded guilty to class A misdemeanor, 30 days);
- Robert Schornak, 21-278 (BAH) (pleaded guilty to class A misdemeanor, 28 days intermittent).

## **Incarceration Followed by a Period of Probation is Impermissible**

The government continues to request split sentences, noting that there are now other

courts in this jurisdiction who have agreed that these types of sentences are permissible,

including this Court.[1] The issue is now before the D.C. Circuit and we raise this objection to preserve the issue for Ms. Pryer. *See United States v. Little*, 22-3018 (originating docket No. 21-cr-315 (RCL)). We submit that a correct reading of the relevant statutes and the legislative history, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration. Again, Counsel understands that this Court has already ruled to the contrary on this issue in a similar case. Lastly, the government asserts that, at a minimum, the Court can impose intermittent confinement as a condition of probation. Again, we raise this issue to preserve it for appeal in light of the pending D.C. Circuit case. We contend that the Court does not have statutory authority to impose any sentence of imprisonment and probation for a petty offense regardless of what the incarceration is called. For a petty offense, it is unclear at what point an "interval of time" effectively becomes a "term of imprisonment" and therefore would constitute an unauthorized sentence of both imprisonment and probation. Cf. 18 U.S.C. §3583(d) (term of intermittent confinement pursuant to §3563(b)(10) may be imposed only for a *violation* of condition of supervised release).  A

---

[1] Many judges in this district confronted with the government's request for a split sentence for one single petty offense conviction have declined to impose such a sentence.  *See United States v. Spencer*, 21-CR-147 (CKK) (amending sentence after briefing provided), ECF No. 70; *United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125); *United States v. Kari Kelley*, 21-CR-201 (DLF) (At sentencing on March 17, 2022, Judge Friedrich rejected the government's contention that a split sentence could be imposed even after being provided notice of the *Little* decision); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (Judge Hogan also rejecting government's proposal for split sentence); *United States v. Vic Williams*, 21-CR-388 (RC) (court did not impose split sentence despite government's recommendation of split sentence); *United States v. Zachary Wilson*, 21-CR-578 (APM) (same); *United States v. Traci Sunstrum*, 21-CR-652 (CRC) (same); *United States v. Michael Carico*, 21-CR-696 (TJK) (same); *United States v. Tanner Sells*, 21-CR-549 (ABJ) (same).

sentence of "intermittent confinement" as a condition of probation for a petty offense raises significant issues and potential constitutional issues. *See United States v. Voda*, 994 F.2d 149, 151 n.2 (5th Cir. 1993) ("Voda expressly waived any argument that imposition of sixty days' confinement served over sixty day period is "imprisonment," as opposed to intermittent confinement, and thus a violation of section 3562"); *United States v. Baca*, 2011 WL 1045104 (C.D. Cal. March 18, 2011) supra at *2 (45 day condition of confinement violates statute).

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Ms. Pryer places her trust in this Court to do just that.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004