UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 21-cr-667-RCL-ZMF |
| MAHAILYA PRYER, | |
| Defendant. | |

### REPORT AND RECOMMENDATION

**A.   Background**

In September 2022, Ms. Mahailya Pryer pleaded guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). She was sentenced to 45 days imprisonment followed by three years of probation, 60 hours of community service, $500 in restitution, and a $10 special assessment. *See* J. Mahailya Pryer ("Pryer Judgment") 2, 3, 6, ECF No. 53. Ms. Pryer's 45-day prison term ended on December 29, 2022.

On April 14, 2023, the Probation Office filed a petition requesting that an arrest warrant be issued based on Ms. Pryer's violations of her probation conditions. *See* Sealed Probation Pet. Mahailya Pryer ("Probation Pet."), ECF No. 62. The lead violations included commission of another federal, state, or local crime (driving without a license and insurance), being untruthful with probation officers, and unlawful use and possession of a controlled substance (methamphetamine). *See generally* Probation Pet. On April 26, 2023, Judge Lamberth, to whom

1

the case had been reassigned,[1] issued an arrest warrant. *See* Sealed Order Granting Probation Pet. Mahailya Pryer, ECF No. 63.

On May 1, 2023, law enforcement arrested Ms. Pryer in the Western District of Missouri. *See* Rule 5(c)(3) Docs. Received Mahailya Pryer 2, ECF No. 64. On May 3, 2023, a magistrate judge in that district saw Ms. Pryer for her initial appearance and committed her to the District of Columbia. *Id.* at 3. On May 16, 2023, this Court held a preliminary hearing on violations and considered release conditions; Ms. Pryer remained detained. *See* Min. Entry (May 16, 2023). On May 22, 2023, the Court held another status hearing; Ms. Pryer remained detained. *See* Min. Entry (May 22, 2023). On June 5, 2023, the Court released Ms. Pryer from custody and imposed supervised release conditions. *See* Second Am. Order Mahailya Pryer ("Second Amended Order") 1, ECF No. 68.

On August 15, 2023, the Probation Office filed a petition stating that Ms. Pryer had violated the conditions of her probation. Probation Pet. Mahailya Pryer 4, ECF No. 70. The Court subsequently requested briefing as to whether Ms. Pryer's probation must be terminated as an illegal sentence in light of *United States v. Little*, 78 F.4th 453, 456 (D.C. Cir. 2023), which held that a defendant convicted of a single petty offense may not be sentenced to both imprisonment and probation. *See* Min. Order (Aug. 18, 2023).[2]

On November 7, 2023, Ms. Pryer submitted a petition to terminate her probation. Mot. Terminate Probation as Illegal Sentence ("Mot. Terminate") 1, ECF No. 77. On December 1,

---

[1] The case was previously assigned to Judge Pan, who is now serving on the D.C. Circuit.

[2] Prior to the issuance of *Little*, the undersigned had intended to recommend the termination of supervision as unsuccessful.

2023, the government opposed Ms. Pryer's motion. Mem. Opp'n. Mot. Early Termination Probation & Mot. Resentencing ("Opp'n") 1, ECF No. 80.

**B.     Discussion**

The parties agree that Ms. Pryer was illegally sentenced to both imprisonment and probation for a single petty offense. *See Little*, 78 F.4th at 456; Mot Terminate at 1; Opp'n at 1. They differ from there. Ms. Pryer asks the Court to terminate her probation. Mot. Terminate at 1. The government asks the Court to resentence Ms. Pryer. Opp'n at 1. Before the Court can address Ms. Pryer's petition, it must determine the ramifications of the sentence's illegality. For the reasons below, the undersigned recommends that the District Judge void Ms. Pryer's sentence of probation, DENY the government's motion for resentencing, DISMISS Ms. Pryer's motion for early termination as moot, and close the case.

When a defendant has "fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further [i]s gone." *Ex parte Lange*, 85 U.S. 163, 176 (1873); *see In re Bradley*, 318 U.S. 50, 52 (1943) (holding the same). In both *Lange* and *Bradley*, trial courts had illegally sentenced petitioners to imprisonment and a fine, when the applicable statutes permitted only one of those two alternatives. *Lange*, 85 U.S. at 164; *Bradley*, 318 U.S. at 52. The Supreme Court held that Mr. Lange and Mr. Bradley could not be resentenced because they had completed one part of their binary sentences. *Lange*, 85 U.S. at 164; *Bradley*, 318 U.S. at 52. It explained, to "vacate [a] judgment entirely, and without reference to what has been done under it, . . . is to punish [a petitioner] *twice* for the same offense." *Lange*, 85 U.S. at 175. And doing so would violate the Double Jeopardy Clause's prohibition against "'multiple punishments for the same offense' imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

*Lange* and *Bradley* dictate the outcome here. Ms. Pryer could have suffered imprisonment *or* probation—not both. *Little*, 78 F.4th at 456. When Ms. Pryer completed her term of imprisonment, "[she] had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence, and had suffered [a period of probation] on account of the other. It thus showed the court that its power to punish for that offence was at an end . . . [and] the power to render any further judgment did not exist." *Lange*, 85 U.S. at 176.

Applying *Lange*, the Court in *Bradley* demonstrated how expansive double jeopardy protections are. Mr. Bradley initially went to prison. 318 U.S. at 51. Three days later, he paid his fine. *Id.* "Later on that day the court, realizing that the sentence was erroneous, delivered to the clerk an order amending it by omitting any fine." *Id.* The court tried to refund the fine to allow it to impose a lawful prison sentence. *Id.* at 51-52. A refund would have reduced Mr. Bradley's double jeopardy (two punishments for one offense) to single jeopardy (one punishment for one offense). *See Jones*, 491 U.S. at 389-90 (Scalia, J., dissenting). Even still, the Supreme Court rejected this effort to rebalance the punishment scheme. *Bradley*, 318 U.S. at 50. It held that the "petitioner's rights did not depend upon what the officers subsequently did with that money." *Id.* at 52. Once the "petitioner had complied with a portion of the sentence which could lawfully have been imposed . . . the power of the court was at an end." *Id.* at 52. Understanding this, courts have followed *Lange* and *Bradley* to discharge an illegal portion of punishment after another legal portion has been lawfully completed for a single offense. *See Dye v. Frank*, 355 F.3d 1102, 1108 (7th Cir. 2004); *United States v. DiGirlomo*, 548 F.2d 252, 254-55 (8th Cir. 1977); *U.S. ex rel. Kanawha Coal Operators Ass'n v. Miller*, 540 F.2d 1213, 1214 (4th Cir. 1976).

The government attempts to sidestep such precedent by asking for resentencing and suggesting that the court can create a formula—although none is proffered—to credit the illegal

4

punishment toward Ms. Pryer's eventual sentence. Opp'n at 14 (citing *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998) (quoting *Jones*, 491 U.S. at 384)); *id.* at 16 n.5 (citing *United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (explaining that punishment already endured must be fully subtracted from any new sentence imposed)). The government's argument "that the erroneous judgment first rendered in the present case . . . must be treated as no judgment, and, therefore, present[s] no bar to the rendition of a valid judgment . . . is plausible but unsound." *Lange*, 85 U.S. at 174; *see United States v. Fogel*, 829 F.2d 77, 82 (D.C. Cir. 1987) ("A partially defective sentence is not void in its entirety."). It is true that crediting is how the Court resolved the double jeopardy issue in *Jones*. 491 U.S. at 384. But *Jones* is inapplicable. The trial court in *Jones* sentenced a defendant for two offenses: felony-murder and the underlying felony, attempted robbery. 491 U.S. at 378. After the defendant had completed the sentence for his robbery conviction, a state court vacated that conviction. *Id.* at 379. Over the defendant's double jeopardy objection, the Supreme Court kept the defendant in prison serving his felony-murder sentence. *Id.* at 387. It concluded that "alteration of [the defendant's] sentence to a single term for felony murder with credit for time served provided suitable protection of his double jeopardy rights." *Id.* It distinguished *Bradley* and *Lange* based on two "important differences." *Id.* at 384. First, *Bradley* and *Lange* both "involved alternative punishments that were prescribed by the legislature for a *single* criminal act." *Id*. (emphasis added). *Jones*, however, "involve[d] separate sentences imposed for what the sentencing court thought to be *separately punishable offenses*, one far more serious than the other." *Id.* (emphasis added). Second, "[w]hile it would not have been possible to 'credit' a fine against time in prison, crediting time served under one sentence against the term of another has long been an accepted practice." *Id*.

These two distinguishing factors are inapplicable here. First, Ms. Pryer's case involves a *single* offense. Second, probation—like the fine in *Jones*—is a "different type" of punishment that is "not . . . possible to 'credit' . . . against time in prison." *Jones*, 491 U.S. at 377. Unlike imprisonment, probation is a "mild and ambulatory punishment . . . intended as a reforming discipline." *McDonald v. United States*, 415 A.2d 538, 541 (D.C. 1980) (internal quotation marks omitted). Indeed, the Court is unaware of any case where a court converted days on probation without any form of confinement to days in imprisonment. Although both probation and imprisonment are measured in days, qualitative differences foreclose any conversion between the two. Imprisonment is about confinement and removal from the community. Restriction on liberty is the appropriate metric, not the superficial quantum of the number of days. Like a fine, the restriction probation places on a person's liberty is insufficiently meaningful to make it convertible.[3] Indeed, probation allows a petitioner to "move freely within the district for work, medical care, exercise, and other lawful purposes" while "provid[ing] oversight . . . and a structured support system for his ongoing rehabilitation." *United States v. Gripper*, Nos. 01-cr-170 & 00-cr-408, 2022 WL 541226, at *6 (M.D.N.C. Feb. 23, 2022). Moreover, "[i]t is difficult to imagine . . . why the difference between a credit [of imprisonment time] and a [monetary] refund (which could have been made in *Bradley*) should be of constitutional dimensions insofar as the Double Jeopardy Clause is concerned. *Bradley*, of course, did not rely upon any difference in the nature of the two punishments, but upon the mere fact that one of them had been completely executed." *Jones*, 491 U.S. at 391 (Scalia, J., dissenting).

---

[3] To suggest otherwise minimizes the severity of imprisonment.

Cases that allow for resentencing with illegal prior sentences have generally involved crediting incarceration or home detention toward new periods of incarceration. *See, e.g.*, *United States v. Carpenter*, 320 F.3d 334, 344-45 (2d Cir. 2003) (crediting time in home detention); *United States v. Versaglio,* 85 F.3d 943, 948-49 (2d Cir. 1996), *opinion modified on reh'g*, 96 F.3d 637 (2d Cir. 1996) (allowing the court to increase the amount of the fine after the defendant had fully paid the fine but had not served any prison time); *United States v. Miller*, 991 F.2d 552, 554 (9th Cir. 1993) (crediting time in home detention). This is for good reason. "Home detention is still detention, and it imposes significant restrictions on an inmate's mobility and freedom." *Gripper*, 2022 WL 541226, at *6.

In one case—and one only—a court was willing engage in the mental parkour of converting time on supervised release to imprisonment. *See Lominac*, 144 F.3d at 318. That court offered no authority for, or explanation of, why courts could convert such non-restrictive time to an imprisonment equivalent. *Id.* "[A]lthough supervised release is punishment, it cannot be credited against prison time any more than payment of a fine, also a form of punishment, can be credited against prison time." *Id.* at 319 (Widener, J., dissenting). Regardless, "'supervised release, in contrast to probation, is meted out *in addition to, not in lieu of, incarceration*.' As a result, like parole (which precedes it as a post-confinement term of supervision in federal sentencing), supervised release 'is more akin to imprisonment than [is] probation.'" *United States v. Libby*, 495 F. Supp. 2d 49, 52 n.2 (D.D.C. 2007) (quoting *Samson v. California,* 547 U.S. 843, 850 (2006) (alteration in original)). That is, "on the continuum of supervised release, parole and probation, restrictions imposed by supervised release are the most severe." *United States v. Balon,* 384 F.3d 38, 44 (2d Cir. 2004) (internal quotation marks and brackets omitted); *see United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990) (parole is a "stronger medicine" that probation).

7

The government relies heavily on *Martin* to justify converting days on probation to imprisonment. 363 F.3d at 37; Opp'n at 16 &n.5. There, the circuit court directed the trial court to credit days in home detention and on probation, advising that probation should be credited "to an even lesser degree [than home detention], reflecting its less restrictive conditions." *Martin*, 363 F.3d at 40. But *Lominac* and related cases were the primary basis for the court's conclusion that crediting probation was possible. *Id.* at 38. And this Court will not build upon *Lominac*'s house of cards. Moreover, neither *Martin* nor the government offer a workable approach to crediting various types of punishment toward prison time or explains why the same rationale would not apply to the fine imposed in *Bradley*. Because crediting is impossible, any "resentencing, when combined with the sentence [] already suffered and satisfied, [will] impose greater punishment on [Ms. Pryer] than legislatively authorized." *United States v. Holmes*, 822 F.2d 481, 499 (5th Cir. 1987) ("We think it clear that if a defendant, sentenced for contempt to a year in prison and a $100,000 fine, serves two days of his prison sentence but does not pay his fine, he cannot then be resentenced to the fine only and thus be forced to pay it.").

Separately, the government argues that Double Jeopardy principles—which are the bases for the holdings in *Lange* and *Bradley*—do not apply, because they do not attach to an illegal sentence. Opp'n at 10–11 (citing *Fogel*, 829 F.2d at 87). In *Fogel*, for example, the defendant did not have an expectation of finality in a sentence below the statutory minimum. 829 F.2d at 87. The trial court was "free to correct the defect in the original sentence but only to the extent necessary to bring the sentence into compliance with the statute." *Id.* at 90. And in *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980), the Defendant had no expectation of finality when Congress had provided that his sentence was subject to appeal. True enough, but cases allowing for resentencing do not justify ignoring *Lange* for two reasons. First, those cases acknowledge

*Lange*'s specific import and do not alter its holding.  *See DiFrancesco*, 449 U.S. at 139; *see also Holmes*, 822 F.2d at 497 ("[T]he Supreme Court has declined . . . to read *DiFrancesco* as impliedly fully overruling *Lange* and, through *Lange, Bradley*."); *Versaglio*, 85 F.3d at 948 ("We cannot disregard two Supreme Court holdings on the basis of [*DiFranceso*] when that later decision includes language quoting, without disapproval, the key passage of one of the earlier decisions."). In *DiFrancesco*, the Court concluded that a statute authorizing appeal of a sentence was constitutional.  449 U.S. at 138–39.  It explained "a sentence does not have the qualities of constitutional finality that attend an acquittal," even after a defendant has begun serving the term. *Id*. at 134.  The Court distinguished its holding from that in *Lange*, reasoning that *Lange* presented a unique circumstance in which the "trial court [had] erroneously imposed both imprisonment and fine, even though it was authorized by statute to impose only one . . . and the defendant having suffered one of the alternative punishments, 'the power of the court to punish further was gone.'" *Id.* at 138 (quoting *Lange*, 85 U.S. at 176).  The Court in *DiFrancesco* considered the extent to which *Lange* was "susceptible of general application" and whether it invalidated the statute at hand.  *Id.* at 139.  That question is of no moment, because *Lange*'s specific context is the exact context at issue here.

Second, notwithstanding *Versaglio* (addressed below), those cases do not involve circumstances in which a defendant sentenced on *single* count has fully served one of two alternative punishments.  *See Jones*, 491 U.S. at 377 (distinguishing *Bradley* because *Bradley* was a single offense case, where *Jones* had two offenses).  Rather, they involve cases of inadvertent error, multi-count cases, or cases in which an increase in sentence was necessary to comply with the statute.  *See Bozza v. United States*, 330 U.S. 160, 166–67 (1947) (sentence may be increased to include a mandatory fine where the fine was omitted from original sentence); *United States v.*

*Townsend*, 178 F.3d 558, 570 (D.C. Cir. 1999) (allowing resentencing on "other counts of the [sentencing] package" after certain counts were vacated); *Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965) (authorizing resentencing on one count after defendant had begun to serve consecutive sentences for crimes for which "Congress did not intend should receive double punishment"); *Hayes v. United States*, 249 F.2d 516, 517–18 (D.C. Cir. 1957) (defendant had begun to serve an invalid sentence under an incorrect statute); *Burns v. United States*, 552 F.2d 828, 831 (8th Cir. 1977) (increase in sentence necessary to comply with the statute).  Each is readily distinguishable from *Lange* and *Bradley*'s narrow application protecting a party who has "complied with a portion of the sentence which could lawfully have been imposed," *Bradley*, 318 U.S. at 52, from "a second punishment . . . on the same facts, for the same statutory offence." *Lange*, 85 U.S. at 168; *see Fogel*, 829 F.2d at 89–90 (concluding the district court had only been free to increase the sentence to the extent necessary to bring it into compliance with the statute and that the further, unnecessary increase violated the Double Jeopardy Clause).

      Ignoring this particular—and dispositive—double jeopardy issue, the Second Circuit found a separate path for resentencing after determining that a trial court imposed an erroneous sentence of a fine and imprisonment.  *See Versaglio,* 85 F.3d at 948-49.  At resentencing, the court could not impose imprisonment—because the defendant had fully paid the fine—but it could "make an upward adjustment in the amount of the fine." *Id.* at 949.  The court based its logic in *Lange'*s imposition of the statutory maximum, reasoning that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment."  *Id.* at 948; *see Holmes*, 822 F.2d at 498-99 ("What differentiates the *Bradley*-type case[s] . . . is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.").  But *Bradley* did not hinge on

10

whether the maximum sentence had been imposed (and the opinion does not state whether it had), "but [rather] upon the mere fact that one [punishment] had been completely executed." *Jones*, 491 U.S. at 391 (Scalia, J., dissenting).  In fact, the trial court had tried to refund the fine amount Mr. Bradley had paid—effectively reducing the fine to zero.  *Bradley*, 318 U.S. at 52.  This concretely demonstrates the Court was not focused on whether either punishment had hit the statutory maximum.

Finally, the interests of justice do not warrant resentencing.  *See United States v. West*, 393 F.3d 1302, 1312 (D.C. Cir. 2005), *abrogated by Burgess v. United States*, 553 U.S. 124 (2008) (noting that society requires "fair warning . . . be given . . . in language that the common world will understand, of what the law intends to do if a certain line is passed" and has "instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should" (internal quotation marks omitted)). Ms. Pryer has already served 81 days in custody and been on probation for over eight months.  *See* Pryer J. at 2; Second Am. Order at 1.  There is no risk that Ms. Pryer will "escape punishment."  *Bozza*, 330 U.S. at 166.  Indeed, she has served far more time in incarceration than defendants with comparable charges relating to the same conduct.  *See Sentences Imposed in Cases Arising out of the Events of January 6, 2021*, Department of Justice (Nov. 8, 2023), https://www.justice.gov/file/159006/download (majority of defendants sentenced under 40 U.S.C. § 5104 not sentenced to any jail time).

The government argues that a court should have authority to resentence Ms. Pryer under Section 3553(a) to ensure that the overall punishment is suitable to Ms. Pryer's specific circumstances.  Opp'n at 15.  Resentencing would place the judge back in time to consider whether they would have more harshly sentenced on one punishment if they could not have given two punishments.  *See Versaglio*, 85 F.3d at 949.  The argument has only superficial appeal.  First, this

ignores that the Double Jeopardy clause already limits a judge's discretion at such resentencing. *See Versaglio*, 85 F.3d at 947 (rejecting the government's argument that it had "the option to choose between a fine and imprisonment" upon resentencing). It is a fallacy to suggest that a true recalibration can occur. The Court here would only have authority to adjust the length of Ms. Pryer's imprisonment, the portion of her sentence she has fully served.[4] *See id.* Second, it ignores that time has elapsed since the original sentencing. How can the judge recalibrate without looking to new facts, such as violations that have since occurred? These are considerations the judge would never have known at sentencing. Yet under the government's framework, a defendant could suffer a harsher sentence because of a judge's mistake in the original sentence. This smacks of unfairness. Ultimately, this timeline is set. Ms. Pryer was sentenced months ago. There is no way to prune this timeline and start anew.

The government's blithe retort to such unfairness is that allowing Ms. Pryer "to escape a proper sentence because the district court chose [probation] in lieu of [a longer term in] prison would merely compound judicial error." Opp'n at 16 n.5 (quoting *Martin*, 363 F.3d at 41 (citing *Bozza*, 330 U.S. at 166–67 (alterations in original)). This ignores that "[t]he Double Jeopardy Clause is and has always been, not a provision designed to assure reason and justice in the particular case, but the embodiment of technical, prophylactic rules that require the Government to turn square corners. Whenever it is applied to release a criminal deserving of punishment it frustrates justice in the particular case, but for the greater purpose of assuring repose in the totality of criminal prosecutions and sentences." *Jones*, 491 U.S. at 396 (Scalia, J., dissenting). "The fact

---

[4] This could force results that do not reflect a defendant's specific circumstances. For example, a court could sentence a destitute defendant to 45 days imprisonment and a $1 fine. Assuming the defendant had paid her fine, the court's only option on resentencing would be to increase the fine, which could be draconian.

that [a case] produces a 'windfall' separates it not at all from other applications of the double jeopardy guarantee." *Id.* The government's citation to *Bozza*—"[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner"—misses the mark for the same reason. Opp'n at 16 n.5 (quoting *Bozza*, 330 U.S. at 166-67). The Court there recognized that double jeopardy still trumped any concerns of windfall. *Bozza*, 330 U.S. at 166. Two sentences later, the Court said its holding was only permissible because the Court "did not twice put petitioner in jeopardy for the same offense." *Id.* at 167. "With technical rules, above all others, it is imperative that we adhere strictly to what we have stated the rules to be. A technical rule with equitable exceptions is no rule at all. Three strikes is out. The State broke the rules here, and must abide by the result." *Jones*, 491 U.S. at 396 (Scalia, J., dissenting).

### C. Conclusion

"Done is done." *Jones*, 491 U.S. at 392 (Scalia, J., dissenting).

<br><br>

January 17, 2024  
Date

_____  
ZIA M. FARUQUI  
UNITED STATES MAGISTRATE JUDGE