## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **:** |
| | **:** |
| **v.** | **:** |
| | **:**  **Case No. 21-CR-667 (RCL)** |
| **MAHAILYA PRYER,** | **:** |
| | **:** |
| *Defendant.* | **:** |

### GOVERNMENT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
### PROPOSED FINDINGS AND RECOMMENDATIONS

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits the following objections to Magistrate Judge Zia M.

Faruqui's Report and Recommendation to this Court regarding Defendant Mahailya Pryer's

Motion for Early Termination of Probation. ECF No. 88 ("R&R"). In light of the D.C. Circuit's

decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), holding that a defendant

convicted of a single petty offense may not be sentenced both to imprisonment and to probation

for that offense, the R&R recommended that this Court sua sponte void the probationary term of

Pryer's split sentence and dismiss Pryer's motion for early termination of probation as moot.

The government respectfully objects to the R&R's mistaken conclusion that principles of

double jeopardy require that the Court void Pryer's probationary term sua sponte because she

already served the entirety of the incarceration component of the split sentence. As this Court

found prior to resentencing Little on remand, double jeopardy does not require this outcome.

Moreover, it is not proper for the Court to sua sponte void a portion of the sentence imposed.

*United States v. Little*, 2024 WL 181260 (D.D.C. Jan. 17, 2024) ("*Little Resentencing Opinion*")

The government also respectfully objects to the R&R's suggestion that resentencing is not the appropriate remedy for an illegal sentence and to the R&R's assertion that resentencing Pryer would violate double jeopardy.

Finally, although the R&R did not consider Pryer's motion for early termination on its merits, the government respectfully requests that this Court deny the motion because neither Pryer's conduct nor the interests of justice warrant early termination under 18 U.S.C. § 3564(c).

## BACKGROUND

### I.   Factual Background

On January 6, 2021, Pryer and her co-defendant, Cara Hentschel, breached the U.S. Capitol building alongside a large, violent mob of rioters, which caused immense harm to the U.S. Capitol building and those who defended it, and which ultimately forced the halt of the Joint Session of Congress held that day to certify the results of the 2020 Electoral College vote.[1] Pryer and Hentschel traveled from Missouri to Washington, D.C., where they entered onto Capitol grounds and approached the east side of the Capitol building, where they witnessed violent clashes between rioters and Capitol Police defending the building.

Between 2:25 p.m. and 3:30 p.m. in the afternoon of January 6, the Rotunda Doors on the east side of the Capitol building were breached three separate times by rioters. The breaches at the Rotunda Doors were some of the most consequential of the Capitol as hundreds of rioters entered the building at that location. Pryer and Hentschel were among the first rioters who entered during the second breach. They entered the doors at 2:43 p.m., five minutes after the second breach began, when shattered glass from the door was strewed on the floor, alarms were blaring, and chemical

---

[1] *See* ECF No. 44 (Gov't Sent. Memo.) at 3–19 for full recitation of facts relevant to Pryer's conduct on January 6, 2021.

irritant spray was in the air. Pryer and Hentschel then traveled and remained with the crowd in the Rotunda before returning to the Rotunda Doors and exiting the building at approximately 2:51 p.m.



*Pryer and Hentschel after entering the Capitol building through the Rotunda Doors.*

In an interview with law enforcement following her guilty plea, Pryer admitted to seeing glass on the floor, chemical irritant in the air, and people smoking in the Capitol, but said that the rioters' presence was justified because they paid for that building and "it's the people's house." Pryer later acknowledged that it was not the proper time to be there. Pryer admitted she deleted statements and media from her phone and social media profiles before law enforcement could access them, but records from Hentschel's Facebook account revealed that Pryer wrote as part of a Facebook conversation on January 9, 2021:

> Hi I have told many people that yes antifa may have instigated it but it didn't take much to piss off already pissed of Patriots. I am not ashamed of what I have done. I am proud of it and I would do it again if it called for it and I will win it does call for it. We have to sacrifice in order to keep our freedom. It's not supposed to be like that but when times call for it we have to.

## II.       Procedural Background

On May 18, 2022, pursuant to a plea agreement, Pryer pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings).

As noted by the plea agreement and the U.S. Probation Office, Pryer faced up to six months of imprisonment and a fine of up to $5,000 for violating 40 U.S.C. § 5104(e)(2)(G). Because her offense was a Class B Misdemeanor, the Sentencing Guidelines did not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9. On September 30, 2022, Pryer was sentenced to 45 days of incarceration, well below the statutory maximum, followed by three years of probation.

Pryer completed her term of incarceration on December 27, 2022 and began her term of probation under the supervision of the U.S. Probation Office in the Western District of Missouri. On April 14, 2023, Probation filed a petition alleging Pryer violated eight of her probation conditions, including that Pryer used or possessed a controlled substance (methamphetamines) on at least four occasions since beginning supervision, which triggered mandatory revocation. 18 U.S.C. § 3565(b)(4); *see* April 14, 2023 Violation Report. The report also noted four occasions where Pryer operated a motor vehicle without a valid license, two occasions where Pryer was "untruthful when questioned by the probation officer," and that she had failed to make any efforts to secure gainful employment, pay her Court-ordered restitution, or complete any of her required community service. April 14, 2023 Violation Report at 2-4.

On April 27, 2023, Probation filed a supplement alleging additional violations, including additional failed drug tests, and recommended that an arrest warrant be issued and an additional term of incarceration be imposed. April 27, 2023 Violation Report. The report stated in its recommendation: "Ms. Pryer has started this term of supervision basically the way she ended her term of pretrial supervision. She presents as if she is intentionally committing violations and not

4

being truthful because she does not believe there are consequences. Based on her untruthfulness, everything she reports needs to be verified, and she complains that she is being treated unfairly." *Id.* at 3-4.

The Court issued a warrant for Pryer's arrest on April 25, 2023, and she was taken into custody on May 1, 2023. On June 5, 2023, Pryer was released pending a final revocation hearing to an in-patient drug treatment program, then to the custody of her mother on June 25, 2023.

On August 15, 2023, the U.S. Probation Office filed an additional petition for revocation, documenting new violations Pryer committed while awaiting her final revocation hearing, including two additional positive drug tests for methamphetamine and fentanyl. Dkt. 70. The report noted instances where Pryer attempted to "obstruct or tamper" with Probation's drug testing and where she failed to comply with her location monitoring, in addition to failing to make any efforts to satisfy her Court-ordered obligations regarding restitution and community service. *Id.* at 2-3.

On November 7, 2023, Pryer moved to terminate probation as an illegal sentence pursuant to *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023). Pryer's motion did not address the violations of her terms of probation and the subsequent probation proceedings. The government opposed this motion and asked that the Court resentence Pryer. ECF No. 80. The government also asked that the Court hold Pryer's motion in abeyance during the pending appeal in *United States v. Caplinger*, Case No. 22-3057 (D.C. Cir.).

On January 17, 2024, U.S. Magistrate Judge Zia M. Faruqui issued the R&R, recommending that this Court void Pryer's ongoing term of probation, dismiss her motion for early termination as moot, and close the case. R&R at 3.

## LEGAL STANDARD

"A district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made. . . ." LCvR 72.3; *see also* Fed. R. Crim. Pro. 72(b). "A district judge may make a determination based solely on the record developed before the magistrate judge, or may conduct a new hearing, receive further evidence, and recall witnesses. A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions." LCvR 72.3; *see also* Fed. R. Crim. P. 72(b).

## ARGUMENT

The R&R's recommendation is built on the mistaken conclusion that the Supreme Court's decisions in *Ex parte Lange*, 85 U.S. 163 (1873), and *In re Bradley*, 318 U.S. 50 (1943), require that the Court void Pryer's probationary term sua sponte because she already served the entirety of the incarceration component of the split sentence. R&R at 3-4. Other than stating that *Lange* and *Bradley* "dictate the outcome here," the R&R provides no basis—substantive or procedural— for its recommendation that voiding Pryer's probationary term on the Court's own initiative is the proper remedy. *Id.* But, as recently recognized by this Court, "the Supreme Court has read those cases narrowly" and, as in *Little*, *Lange*/*Bradley* do not dictate the outcome here. *Little Resentencing Opinion* at *8.

Moreover, while the government acknowledges that Pryer cannot be resentenced on the government's motion at this juncture,[2] the government respectfully objects to the R&R's

---

[2] The government's opposition to Pryer's motion for early termination was styled as "Government's Memorandum in Opposition to Motion for Early Termination of Probation and Motion for Resentencing." ECF No. 80. While the government maintains that resentencing is the proper means for remedying an illegal split sentence, it recognizes that given the potential for

suggestion that resentencing is not the appropriate remedy for an illegal sentence and to the R&R's assertion that resentencing Pryer would violate double jeopardy. Indeed, this Court has already held as a matter of law that "the Court may impose an additional punishment on [the defendant] [at resentencing] so long as it appropriately credits the time [the defendant] served in prison and on probation against the punishment." *Id.* at 12.

Finally, although the R&R did not reach the merits of defendant's motion for early termination of probation, the government notes that such relief is not warranted under 18 U.S.C. § 3564(c). Considering the 18 U.S.C. § 3553(a) factors, neither Pryer's conduct nor the interests of justice warrant early termination. The seriousness of Pryer's offense and her egregious noncompliance with the conditions of her probation bar the discretionary relief laid out in § 3564(c). Moreover, the proper avenue for addressing the illegality of a split sentence of incarceration and probation is resentencing—not simply ending one component of an unlawful sentencing package—and the interests of justice would not be served by circumventing this remedy.

## I.      The Court Should Not Void Pryer's Probationary Term

The R&R's recommendation to void Pryer's probationary term is based solely on the conclusion that "*Lange* and *Bradley* dictate the outcome here" and that those cases require the Court to discharge Pryer's probationary term because she already completed the incarceration component of the split sentence. R&R at 3-4.[3] The government respectfully submits that *Lange*

---

resentencing to result in additional punishment, it is the defendant's prerogative—and not that of the government—to seek such relief.

[3] The R&R recommends (at 3) that the Court "void Ms. Pryer's sentence of probation." The government respectfully objects to this characterization of Pryer's split sentence, which is a single sentence comprised of a term of incarceration and a term of probation. The two components are not sentences of themselves but are together parts of a sentencing whole.

and *Bradley* are not controlling and that the Court should reject the R&R's recommendation on both procedural and substantive grounds.

First, *Lange* and *Bradley* do not provide any basis for the Court to void one component of a split sentence sua sponte. The Supreme Court ordered relief in those cases after the defendants properly challenged the legality of their sentences through writs of habeas corpus and certiorari. *See Lange*, 85 U.S. at 163 (petitions for habeas corpus and certiorari); *Bradley*, 318 U.S. at 52 (petition for certiorari). These decisions were not the result of sua sponte action taken by the Supreme Court. And these cases do not stand for the proposition that courts may alter or void a sentence without procedural basis.[4] The government respectfully submits that, for this reason alone, the Court should reject the R&R's recommendation to void the probationary term of Pryer's sentence.

Second, even if Pryer had properly challenged the legality of her split sentence on direct appeal or pursuant to 28 U.S.C. § 2255, *Lange* and *Bradley* would not require that her term of probation be voided just because she has completed the prison component of her illegal split sentence. The fact that a defendant has served one component of a split sentence does not mean that a court is categorically barred from imposing further punishment—*i.e.*, that any further punishment would exceed that which is statutorily authorized.

---

[4] The circuit court decisions that the R&R cites (at 4) as examples of courts that "have followed *Lange* and *Bradley* to discharge an illegal portion of punishment after another legal portion has been lawfully completed for a single offense" are not to the contrary. In these cases, defendants challenged the legality of their sentences through appropriate procedural means. *See Dye v. Frank*, 355 F.3d 1102 (7th Cir. 2004) (appeal of district court's denial of habeas petition); *United States v. DiGirlomo*, 548 F.2d 252 (8th Cir. 1977) (direct appeal of sentence); *U.S. ex rel. Kanawha Coal Operators Ass'n v. Miller*, 540 F.2d 1213 (4th Cir. 1976) (appeal of district court's denial of motion to correct illegal sentence).

The decision of the D.C. Circuit in *Little* is instructive. Like Pryer, Little was sentenced to a split sentence of incarceration and probation. Little had already served the entirety of his term of incarceration when he submitted his brief to the D.C. Circuit and, for this reason, Little argued that "the proper remedy [for his split sentence] is to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40. The D.C. Circuit did not find merit in this position because it did not end Little's probationary term despite finding his split sentence to be unlawful. Instead, the D.C. Circuit "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Little*, 78 F.4th at 461.[5]

And, to the extent that the D.C. Circuit left open any ambiguity on this point, this Court made clear on remand in *Little* that *Lange/Bradley* does not entitle a defendant who has served the incarceration component of an illegal split sentence to immediate release from probation. *See Little Resentencing Opinion* at *4-7 (rejecting double jeopardy arguments "because the case law does not support such a stark, sweeping reading of *Lange* or *Bradley*" and denying motion to terminate probation). Indeed, by resentencing Little to 150 days' incarceration, *see Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024), this Court clearly rejected the notion that its "power to punish for [defendant's] offense was at an end . . . [and] the power to render any further judgment did not exist," R&R at 4 (quoting *Lange*, 85 U.S. at 176).[6]

---

[5] In vacating Little's unlawful split sentence and remanding the case to the district court for resentencing, the D.C. Circuit's majority did not dispute Judge Wilkins's acknowledgement in dissent that, at resentencing, the district court could impose a term of incarceration or a term of probation longer than that which was originally imposed "if [the district court] concluded that either a longer prison or probationary term were required to meet the goals of [the sentencing statute]." *Little*, 78 F.4th at 469 n.3 (Wilkins, J., dissenting).

[6] Little was originally sentenced to a split sentence of 60 days' imprisonment and 36 months' probation. At the time of resentencing, after remand from the D.C. Circuit, Little had completed his term of imprisonment and approximately 18 months of probation. At the resentencing, the

This Court does not stand alone in its understanding of the limited scope of *Lange* and *Bradley*. The Supreme Court itself has recognized the limited application of these cases, explaining that *Lange* and *Bradley* merely stand for the unassailable, but narrow, proposition that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980); *see also Jones v. Thomas*, 491 U.S. 376, 383 (1989) ("*Lange* therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, and not for the broader rule suggested by its dictum.") (citation omitted); *id.* at 386 ("we do not think the law compels application of *Bradley* beyond its facts"). Following the Supreme Court's controlling guidance, other courts have recognized specific limitations to the *Lange/Bradley* rule that are relevant here. For example, the Fifth Circuit has acknowledged that *Lange/Bradley* applies only where one of the alternative penalties imposes the maximum authorized sentence and is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

*Holmes*, 822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because, among other things, they involved "sentences that were below the maximum authorized

---

Court imposed a prison sentence of 150 days. *See Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024); *see also Little*, 21-CR-315-RCL, ECF 73 (Notes for Resentencing). The Court credited the 60 days of incarceration that Little previously served and gave an additional 30 days of credit against the new sentence for the 18 months of probation already served. Thus, after accounting for 90 days of credit for time previously served, Little will serve an additional 60 days of prison under the lawful sentence imposed at resentencing.

by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows").

Likewise, other circuits have held that *Lange* and *Bradley* do not categorically extinguish a court's power to further punish a defendant even after the defendant satisfies one component of a split sentence. For example, in *United States v. Lominac*, 114 F.3d 308 (4th Cir. 1998), the Fourth Circuit held that "*Bradley* does not bar resentencing" where two components of an unlawful split sentence are of the type that can be credited against each other. *Id.* at 318. The defendant in *Lominac* was originally sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of incarceration in the defendant's particular circumstances. *Id.* at 317-18. And by the time the Fourth Circuit heard the appeal, the defendant had already served the entire term of incarceration and some portion of the term of supervised release imposed under the unlawful split sentence. *Id.* at 317. Nevertheless, the Fourth Circuit found that remanding to the district court for resentencing was appropriate because, "[h]ad the court recognized that it lacked authority to impose the . . . term of supervised release, it might have validly concluded that a prison term of longer than six months was appropriate." *Id.* The Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Thomas*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent

temporal sanction, [defendant's] term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*[7]

Similarly, in *United States v. Versaglio*, 85 F.3d 943 (2d Cir. 1996), the Second Circuit held that *Lange*/*Bradley* does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had already paid the full amount of the originally imposed fine. *Id.* at 948. The Second Circuit vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* (emphasis in original). Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.[8]

---

[7] The R&R found *Lominac* to be unpersuasive, noting that crediting time served on probation against incarceration is "impossible." R&R at 8. But, as recognized by this Court in *Little*, "[p]rinciples of double jeopardy do not prohibit the Court from imposing an additional term of imprisonment or probation when it resentences [defendant], as long as it credits the time already served in prison or probation against any new punishment." 2024 WL 181260, at *4. And the Court credited the time that Little had previously spent on probation when it resentenced him to a new term of incarceration. *See Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024) ("Defendant is committed to the custody of the Bureau of Prisons for a term of 150 days with 60 days credit for time served and 30 days credit for the 18-month term of probation served."); *see also Little*, 21-CR-315-RCL, ECF 73 (Notes for Resentencing) (explaining crediting methodology).

[8] The R&R found *Versaglio* to be unpersuasive. R&R at 10-11. Specifically, the R&R found that the Second Circuit "based its logic [o]n *Lange*'s imposition of the statutory maximum [fine], reasoning that '[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment,'" *id.* at 10 (quoting *Versaglio*, 85 F.3d at 948), and that "*Bradley* did not hinge on whether the maximum sentence had been imposed," *id.* at 10-11. But, as acknowledged by the R&R (at 11), the Supreme Court's opinion in *Bradley* does not state whether or not the maximum fine was imposed in that case. And, to the extent that the maximum fine had not been imposed, there is no indication that any party or

**II.     Resentencing Is The Proper Legal Avenue To Remedy Pryer's Illegal Split Sentence**

The proper remedy for addressing an unlawful split sentence is resentencing. And while the government acknowledges that Pryer cannot be resentenced on the government's motion, the government respectfully objects to the suggestion that resentencing is not the appropriate remedy for an illegal split sentence and to the assertion that resentencing Pryer would violate double jeopardy. *See* R&R at 4-13.

**A.     Resentencing is the appropriate remedy for an unlawful split sentence of incarceration and probation.**

Where a court has imposed an illegal sentence, the remedy is not to automatically terminate that sentence, thereby nullifying the court's carefully crafted punishment. Rather, the remedy for an unlawful sentence is to vacate the sentence in its entirety and impose a lawful sentence. *See United States v. Little*, 78 F.4th 453, 461 (D.C. Cir. 2023) ("So we vacate Little's [split] sentence and remand to the district court for resentencing."); *see also Davenport v. United States*, 353 F.2d 882, 883-84 (D.C. Cir. 1965) ("The appropriate remedy in this situation would appear to be to vacate appellant's [illegal] sentence and remand his case to the District Court for resentencing. . . ."); *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957) (upholding resentencing by district court, noting that "if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment").

The D.C. Circuit's decision in *Little* shows that resentencing is the proper path for addressing an unlawful split sentence. As noted above, the D.C. Circuit rejected Little's request that it order that he "be immediately discharged from probation," Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40, and instead "vacate[d] Little's sentence and

---

the Supreme Court contemplated the possibility of increasing the amount of the fine and, thus, *Bradley* should not be read to cast doubt on *Versaglio*. *See Jones*, 491 U.S. at 386 ("we do not think the law compels application of *Bradley* beyond its facts").

remand[ed] to the district court for resentencing." *Little*, 78 F.4th at 461. Indeed, as this Court recognized in ordering resentencing in Little following this remand, "[t]he D.C. Circuit did not leave Little's remedy as an open question." *Little Resentencing Opinion* at *3.

Resentencing after the imposition of an unlawful sentence is especially appropriate where, both here and in *Little*, the district court imposed a split sentence of incarceration and probation for the commission of a single offense. This district court crafted a sentence comprised of two components—a term of incarceration and a term of probation—to best address the statutory sentencing factors of 18 U.S.C. § 3553(a). Both components of the sentence were integral parts of a unified package constructed by the court to fulfill its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). The components of Pryer's sentence were inextricably intertwined, and simply voiding the term of probation without any further consideration, as the R&R recommends, would undo the sentencing scheme carefully crafted by the court.

Analogy to resentencing under the sentencing package doctrine underscores the need for resentencing here. "The sentencing package doctrine recognizes that when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townshend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). In other words, where multiple counts of conviction are "properly viewed as a package," the "sentences [are], in essence, one unified term of imprisonment." *Id*. at 570 (internal quotation marks omitted). And "successful attack by a defendant on some but not all counts of conviction" may necessitate "vacat[ing] the entire sentence on all counts so that, on

14

remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

The logic underlying resentencing in the sentencing package context applies equally in the split sentence context. Like Little, Pryer was only convicted of a single count, and the sentence this Court imposed can only be attributed to that offense. The two components of Pryer's sentence must be "properly viewed as a package" tailored to the statutory sentencing factors as they relate to Pryer's single count of conviction. *Townshend*, 178 F.3d at 570. And since the decision in *Little* unraveled the "overall plan" this Court crafted here, *id.* at 567, the Court should be given the opportunity, to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw*, 554 U.S. at 253.

The connection between the two components of Pryer's split sentence is further evidenced by the short term of incarceration originally imposed. Then-District Judge Florence Y. Pan imposed a period of incarceration of 45 days, which is well below the statutory maximum sentence of six months, knowing that a significant period of supervision in the form of probation would follow. The sentence was fashioned holistically, and the probationary term was a companion to, and arguably an offset for, the lenient term of imprisonment. Now that the D.C. Circuit's decision in *Little* has invalidated the carefully balanced sentence originally imposed, the Court can address the interplay between these components and determine at resentencing how the initial sentence should be adjusted to bring it into conformity with what is legally authorized and to ensure that it achieves the intended punitive effect. This does not necessarily mean Pryer would face a longer term of incarceration or the imposition of a new term of probation if resentenced. Pryer is entitled to credit for the portion of his sentence already served, and upon review of the 18 U.S.C. § 3553(a)

sentencing factors, the Court may decide that a new sentence equivalent to time served is appropriate.

Rather than seek resentencing, Pryer has dressed up her challenge to the legality of her split sentence as a motion for early termination of probation, seeking to excise one component of the holistic sentence imposed for her conduct on January 6. This motion is the wrong procedural vehicle to challenge her illegal sentence. The proper mechanism for challenging an illegal sentence is through a direct appeal or a challenge pursuant to 28 U.S.C. § 2255, not a motion for early termination of probation.[9] Likewise, the R&Rs recommendation to simply void Pryer's probationary term also runs afoul of the mechanisms for dealing with an illegal sentence.

### B.    Resentencing would not violate double jeopardy.

The R&R argues that resentencing Pryer would violate double jeopardy. R&R at 4-11. But, as this Court has already held, resentencing a defendant in Pryer's position (should she file the appropriate motion) would not violate double jeopardy so long as she receives credit for time already served. *See Little Resentencing Opinion* at *6 ("the Court may impose an additional punishment on Little so long as it appropriately credits the time Little served in prison and on probation against the punishment"); *see also United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (unlawful term of probation must be credited against any subsequent sentence of incarceration); *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998) (unlawful term of supervised release must be credited against any subsequent sentence of incarceration).

The R&R found the idea of crediting time served on probation against incarceration to be "impossible." R&R at 8. But this is exactly what the Court did in *Little*, where, after analyzing the

---

[9] In the interests of justice, the government would consider waiving any applicable procedural barriers to relief sought in a § 2255 motion based on the D.C. Circuit's decision in *Little*, such as appellate or collateral review waivers, procedural defaults, or statutes of limitations.

particular circumstances of that case, including Little's degree of compliance on probation, the Court credited 30 days toward Little's new custodial sentence for the 18 months that Little had already served on probation. *See Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024); *see also Little*, 21-CR-315-RCL, ECF 73 (Notes for Resentencing) (explaining crediting scheme).

Thus, so long as credit is given for time already served, the Double Jeopardy Clause does not bar the imposition of an increased punishment at resentencing where a defendant does not have a legitimate expectation of finality in the sentence originally imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase").

This Court recently held on remand from the D.C. Circuit that Little lacked a legitimate expectation of finality and could be resentenced to additional punishment for two independent reasons—both of which apply to Pryer. First, defendants like Little and Pryer cannot "have a legitimate expectation that [their] sentence is final because it was illegal." *Little Resentencing Opinion* at *5; *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "an increase in appellant's term of probation was not necessary to bring the sentence into compliance with any statute" as "[t]he originally imposed sentence was not impermissible under the penalty statute"); *United States v. Rourke*, 984 F.2d

1063, 1066 (10th Cir. 1992) ("A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification.").[10]

Second, a defendant who attacks an unlawful sentence—by appealing or otherwise challenging the sentence—can have no legitimate expectation of finality in the sentence originally imposed. *See Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 (no legitimate expectation of finality where, "as in this case, the defendant voluntarily placed his sentence at issue by challenging it") (cleaned up); *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "the increase in the original sentence [was] also not predicated on any action taken by the [defendant]"); *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) ("Andersson has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence."). Unlike Little, Pryer did not challenge her sentence on direct appeal. Nevertheless, Pryer would have not have a legitimate expectation of finality if she were to properly challenge the legality of her split sentence in a § 2255 motion. *See Townshend*, 178 F.3d at 567 n.1 (finding no violation of double jeopardy and distinguishing cases that did "not involve situations in which a defendant has voluntarily placed his sentence at issue by challenging it via § 2255").[11]

---

[10] While the R&R does not explicitly address whether or not Pryer has a legitimate expectation of finality in her split sentence, it rejected the notion that double jeopardy does "not attach to an illegal sentence." R&R at 8. Nonetheless, this Court came to the opposite conclusion in *Little*. 2024 WL 181260, at *5.

[11] Pryer's challenge to the legality of her sentence through the improper avenue of a motion for early termination of probation is nothing more than an attempt to have her cake and eat it too. Pryer should not be allowed to challenge the legality of her sentence through improper means and then claim that she maintains a legitimate expectation of finality in her illegal split sentence precisely because she did not raise her challenge through the proper means.

That Pryer already began serving her split sentence—and even that she already completed the imprisonment portion of the sentence—does not change this calculus. On remand from the D.C. Circuit, Little made similar arguments to Pryer, seeking to simply end the probationary component of his sentence without facing resentencing. And he argued that any punishment beyond the prison term he already had served violated double jeopardy. But as this Court and many other courts have recognized, a more severe punishment can be imposed at resentencing even after service of the original unlawful sentence has begun. *See, e.g.*, *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 ("An increased punishment is permissible even if the defendant has begun serving the original, illegal sentence, although any punishment already incurred must be credited against the increased punishment."); *Hayes*, 249 F.2d at 517-18 ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant . . . has begun to serve it"); *Lominac*, 144 F.3d at 317-18 (remanding to district court for resentencing after vacating supervised release component of split sentence, noting that term of incarceration could be adjusted upwards even after defendant completed originally imposed term of incarceration), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996) (remanding to district court to consider imposition of increased fine after invalidating incarceration component of split sentence even after defendant already paid originally imposed fine in full); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("Correction of a sentence can occur even if service of the sentence has begun, even if the correct sentence may be more onerous to the defendant than the original.") (citation omitted); *Christopher v. United States*, 415 A.2d 803 (D.C. 1980) (affirming sentencing court's sua sponte correction of illegal split sentence by eliminating

probation component and imposing term of incarceration greater than that originally imposed where defendant had already begun serving sentence).

Finally, as reflected in the analysis above, *Lange*/*Bradley* would not bar resentencing Pryer to a longer term of incarceration, or alternatively to a term of probation, for at least two distinct reasons. First, unlike *Lange* and *Bradley*, the alternative sentences here do not involve penalties that are impossible to credit against each other. Rather, as described above, any time previously served in prison and any time previously served on probation should be credited against any future sentence of imprisonment or probation imposed at resentencing. *See Lominac*, 114 F.3d at 318; *Martin*, 363 F.3d at 37-38; *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6.

Second, the term of incarceration that Pryer completed was well below the statutory maximum of six months, and resentencing her to a longer term of incarceration or alternatively to a term of probation (taking account of any time already served) would not exceed the maximum punishment authorized by statute. Indeed, the district court intentionally crafted a dual sentencing scheme suited to Pryer's specific offense and circumstances in which each component weighed against the other and played an integral part in the overall plan. "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded that a prison term of longer than [35 days] [or that a standalone probationary term] was appropriate." *Lominac*, 144 F.3d at 317. Thus, the district court "should have the option of considering whether to make an upward adjustment in the" term of imprisonment or whether to impose a standalone term of probation at resentencing. *Versaglio*, 85 F.3d at 948.

## III.   Pryer Does Not Meet The Standard For Early Termination of Probation

The R&R did not reach the merits of defendant's motion for early termination of probation. Instead, the R&R recommended that the Court dismiss Pryer's motion for early termination as moot in light of the recommendation to void Pryer's term of probation. Given the government's

objection to the recommendation that the Court void Pryer's term of probation, the government would like to note that the relief sought by Pryer in her motion for early termination is not warranted under 18 U.S.C. § 3564(c) and it should be denied.

The Court may grant a motion for early termination of probation if, "after considering the factors set forth in section 3553(a)," "it is satisfied that [early termination] is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). None of these conditions are met here.

First, Pryer's conduct does not warrant early termination of probation. Pryer participated in the most serious, violent assault on our democratic institutions in modern history,[12] lied and downplayed her participation, and has brazenly disregarded this Court's conditions imposed on her during probation or while on release pending her revocation proceedings. Probation reported last year that Pryer had failed to pay any amount toward the $500 owed in restitution or the $10 special assessment, nor had she completed any of her 60 community service hours. In violation reports submitted between March and August of 2023, Pryer's noncompliance with the Court's conditions was remarkable, to the degree that her Probation Officer stated: "Pryer presents as if she is intentionally committing violations and not being truthful because she does not believe there are consequences." April 4, 2023 U.S. Probation Office Petition at 7. Pryer began violating her conditions of probation within two weeks of her release from incarceration and in-patient drug treatment. Probation's initial April 4, 2023 petition to revoke her probation cited eight categories of violations committed in just two months. A second violation report filed August 15, 2023 detailed an additional five categories of violations committed while still in revocation proceedings

---

[12] Pryer's conduct on January 6, 2021, is detailed more fully in the Government's Sentencing Memorandum. *See* ECF 44 at 3.

for the violations reported in April. Pryer has shown zero respect for this Court's authority and has given no indication that her prior sentence in any way has deterred her from future criminal conduct. For her conduct alone, Pryer's motion for early termination should be denied.

Second, the interests of justice do not weigh in favor of early termination of probation. As explained above, the proper avenue for addressing the illegality of a split sentence of incarceration and probation is resentencing—not simply ending one component of an unlawful sentencing package. The interest of justice is not served by circumventing the proper remedy to an illegal split sentence. This is especially true where, as here, the Court carefully crafted a split sentence with two components—a term of incarceration, followed by a term of probation—to address the specific circumstances of a defendant's offense and satisfy its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). Granting Pryer's requested relief would allow her to escape the full penalty for her crime after having served one component of an illegal sentence that alone is "[in]sufficient . . . to comply with the purpose of [the sentencing statute]." *Id.* [13]

## CONCLUSION

For the foregoing reasons, the government objects to the R&R and respectfully requests that this Court reject the recommendation to void Pryer's probationary term; deny Pryer's motion

---

[13] The R&R found that "the interests of justice do not warrant resentencing," noting that "[t]here is no risk that Ms. Pryer will 'escape punishment'" where she "has already served 81 days in custody and has been on probation for over eight months." R&R at 11. While the R&R did not make this finding in connection with a § 3564 analysis, it is worth noting that Pryer has been held in custody for longer than the 45 days' incarceration imposed as sentencing because of time spent in custody following her arrest on repeated violations of the conditions of her probation. ECF Nos. 64, 67. Given Pryer's consistent noncompliance and the seriousness of her offense, the government respectfully disagrees with the R&R's implied suggestion that the interests of justice weigh against any further punishment.

for early termination of probation; and, upon the filing of an appropriate motion pursuant to 28

U.S.C. § 2255, resentence Pryer to a legal sentence.[14]

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ Hutton Marshall
J. Hutton Marshall
DC Bar No. 1721890
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20005
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov

</div>

---

[14] If Pryer files an appropriate motion pursuant to 28 U.S.C. § 2255, the government intends to file a supplemental sentencing memorandum prior to resentencing.