UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| v. | Case No. 1:21-cr-667-RCL-2 |
| **MAHAILYA PRYER**, | |
| *Defendant.* | |

## MEMORANDUM OPINION

Today the Court held the final revocation of probation hearing for defendant Mahailya Pryer. Upon consideration of the parties' filings, the applicable law, and the parties' arguments, the Court denied Ms. Pryer's motion for early termination, revoked her probation, and ordered her committed to the custody of the Bureau of Prisons for a term of 156 days, with credit for eighty-one days already served in prison and credit for a further forty-five days that reflects the fourteen months she spent on probation.[1] She will therefore receive an additional 30 days in prison. The Court also denied Ms. Pryer's motion for release pending appeal. This memorandum opinion elaborates on the Court's reasoning as to why Ms. Pryer's motions for early termination and release pending appeal must be denied and why Ms. Pryer's new sentence is consistent with double jeopardy principles and warranted by the circumstances of this case.

### I.   BACKGROUND

On May 18, 2022, Ms. Pryer pleaded guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *See* Min. Entry (May 18, 2022); Plea Agr., ECF No. 33; Statement of Offense, ECF No. 34.  On September 30, 2022

---

[1] The written judgment and commitment order shall state a sentence of 111 days. That is to ensure that Ms. Pryer effectively receives credit from the Bureau of Prisons for the time served on probation.

1

then-District Judge Florence Y. Pan sentenced Ms. Pryer to a term of imprisonment of forty-give days, to be followed by thirty-six months of probation. *See* Judgment, ECF No. 53; Min. Entry (Sept. 30, 2022). The Court also ordered a special assessment of $10 and restitution of $500. Judgment 6. On November 7, 2022, Judge Pan issued an arrest warrant for Ms. Pryer after she failed to self-surrender as directed. *See* Sealed Min. Order (Nov. 7, 2022). In late December, Ms. Pryer completed her term of incarceration and began her term of probation.

When the Court sentenced Ms. Pryer to a term of probation, it included mandatory conditions as well as standard and special conditions of supervision. Judgment 3–6. However, on April 14, 2023, the Probation Office alerted the Court that Ms. Pryer had allegedly violated a number of her probation conditions. *See* Apr. 14, 2023 Sealed Probation Pet. 2–4, ECF No. 62. The report discussed violations of eight separate conditions: that she not commit another federal, state, or local crime (on at least four occasions, operating a motor vehicle without a valid driver's license and without possessing financial responsibility or insurance), that she give truthful responses to her probation officer, that she not unlawfully possess or use a controlled substance (here, methamphetamine), that she participate in substance abuse treatment, that she perform community service, that she secure gainful employment, that she not associate with those engaged in criminal activity, and that she pay her court-ordered restitution. *Id.* By this time, the case had been reassigned to this Court, which issued an arrest warrant. *See* Sealed Order Granting Probation Pet., ECF No. 63.

Law enforcement arrested Ms. Pryer on May 1, 2023. *See* Rule 5(c)(3) Docs. 2, ECF No. 64. A magistrate judge in the district in which she was arrested held Ms. Pryer's initial appearance and committed her to the District of Columbia. *See id.* 3. Magistrate Judge Zia M. Faruqui held a preliminary hearing on May 16, after which Ms. Pryer remained detained. *See* Min.

Entry (May 16, 2023). On May 22, Magistrate Judge Faruqui held a status conference, after which Ms. Pryer remained detained. *See* Min. Entry (May 22, 2023). On May 24, Magistrate Judge Faruqui ordered Ms. Pryer released to "home incarceration at an inpatient facility" pending her final hearing on revocation.[2] *See* Order 1, ECF No. 66. Ms. Pryer was not released until June 5, because of limited bedspace at the inpatient facility. 2d Amend. Order 1 & n.2, ECF No. 68. In all, during her period of probation Ms. Pryer was detained for 36 days.

On July 5, after Ms. Pryer had spent 30 days at the inpatient facility, Magistrate Judge Faruqui modified her conditions of release "from home incarceration to home detention." Min. Entry (July 5, 2023). She was permitted to leave her home "to obtain or receive medical treatment (including for addiction and mental health) and seek or maintain employment." *Id.* To leave her residence for other purposes required permission from the Probation Office. *Id.*

On August 15, the Probation Office filed a supplement alleging further violations: use and possession of methamphetamine and fentanyl, refusal to submit to substance abuse testing, failure to make payments toward her restitution order, failure to attend substance abuse treatment, and

---

[2] Technically, the Sentencing Guidelines refer to "home detention" and "community confinement" rather than "home incarceration." *See, e.g.*, U.S. Sent'g Guidelines Manual § 5B1.3(e) (U.S. Sent'g Comm'n 2023) (listing community confinement and home detention as appropriate "special conditions" of probation).

"Home detention" is defined as "a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office." U.S.S.G. § 5F1.2 cmt. n. 1. The defendant is "required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized." *Id.* "Community confinement" means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours." *Id.* § 5F1.1 cmt. n. 1.

Here, the time Ms. Pryer spent at the community facility was technically home detention rather than community confinement because she was not permitted to engage in "facility-approved programs during non-residential hours." § 5F1.1 cmt. n. 1. Instead, she was ordered to "remain at the inpatient facility for the duration of the treatment" and was "subject to location monitoring at the discretion of the U.S. Probation Office." Order 1–2. She was therefore "restrict[ed] . . . to [her] place of residence continuously." § 5F1.2 cmt. n. 1. In any event, what matters for purposes of crediting time on probation against a future sentence of imprisonment in the double jeopardy context is the substance, not the label, of the defendant's experience on probation.

failure to return to her residence as scheduled without notifying her probation officer.  *See* Aug. 15, 2023 Probation Pet., ECF No. 70.  At that point, Magistrate Judge Faruqui requested briefing on whether Ms. Pryer's supervision should be terminated as an illegal sentence under *United States v. Little*, which held that a court sentencing a defendant for a single petty offense may impose imprisonment or probation but not both.  78 F.4th 453, 454 (D.C. Cir. 2023).  On September 1, Magistrate Judge Faruqui granted the joint request of the government and defendant to modify Ms. Pryer's conditions of release to remove location monitoring.  Order, ECF No. 74.

In November, Ms. Pryer moved for early termination of her probation under 18 U.S.C. § 3564(c).  Def. Mot., ECF No. 77.  The government filed an opposition and motion for resentencing, Gov. Opp'n & Mot. for Resentencing, ECF No. 81.  Ms. Pryer filed a reply.  Def. Reply, ECF No. 82.

In December, the Probation Office filed another petition alleging additional violations.  Dec. 18, 2023 Probation Pet., ECF No. 85.  In addition to further violations of conditions she had violated previously, the Probation Office also alleged that on November 8 she failed to notify her probation officer of a change of residence and that "after multiple unsuccessful attempts by [the Probation Office] to contact [Ms. Pryer] in addition to failing to make herself available for supervision, her whereabouts are reported as unknown."  *Id.* 3.

In January 2024, Magistrate Judge Faruqui issued a report and recommendation.  *See* R. & R., ECF No. 88.  He concluded that because Ms. Pryer had completed her term of imprisonment, double jeopardy principles precluded her resentencing.  *See id.* 3–4.  Magistrate Judge Faruqui therefore recommended that the Court "void Ms. Pryer's sentence of probation, DENY the government's motion for resentencing, DISMISS Ms. Pryer's motion for early termination as moot, and close the case."  *Id.* 3.

On February 2, 2024, the Court issued an opinion denying the government's motion for resentencing and declining to adopt the Magistrate Judge's recommendation that the Court "void" Ms. Pryer's sentence because "[t]he Court can only act within the bounds of its authority set by Congress, and no statute or rule gives the Court authority, under these facts and on this procedural posture, to revisit Pryer's sentence at this time." *United States v. Pryer*, 2024 WL 404378, at *1 (D.D.C. Feb. 2, 2024). The Court also rejected as inconsistent with established precedent the Magistrate Judge's conclusion that double jeopardy principles would prevent Ms. Pryer's resentencing. *See Pryer*, 2024 WL 404378, at *7 n.8; *see also United States v. Little*, No. 1:21-cr-315 (RCL), 2024 WL 181260 (D.D.C. Jan. 17, 2024) (holding that "[p]rinciples of double jeopardy do not prohibit the Court from imposing an additional term of imprisonment or probation when it resentences [a defendant whose split sentence was illegal under *Little*], as long as it credits the time already served in prison or probation against any new punishment."). However, the Court did not rule on Ms. Pryer's motion for early termination because it could not decide that motion "without prejudging her pending revocation hearing." *Pryer*, 2024 WL 404378, at *1. Finally, the Court vacated the referral of this case to the Magistrate Judge and announced it would proceed with a final revocation hearing. *Id.* at *10.

On February 15, 2024, the Court held a status conference. At that hearing, Ms. Pryer did not contest the probation violations. However, she argued that the Court lacked authority to sanction her for any violations of probation or resentence her to any additional punishment, relying on double jeopardy arguments already rejected by the Court. *See* Min. Entry (Feb. 15, 2024). But although Ms. Pryer maintains her sentence is illegal, she has opted not to move to vacate it.[3] At

---

[3] She has chosen not to pursue a motion under 28 U.S.C. § 2255, even though both the government and the Court have all but invited her to. Although by now a § 2255 motion would be time-barred, the government has stated that "[i]n the interests of justice, the government would consider waiving any applicable procedural barriers to relief sought in

5

the hearing, the government stated it would ask the Court to revoke Ms. Pryer's probation and impose a sentence of 141 days, with credit for eighty-one days Ms. Pryer spent incarcerated and thirty days to represent her time on probation, resulting in an additional punishment of thirty days.

On March 11, 2024 the Court held a final revocation hearing. *See* Min. Entry (Mar. 11, 2024). The Court denied Ms. Pryer's motion for early termination and imposed a sentence of 156 days, with credit for eighty-one days Ms. Pryer spent incarcerated and forty-five days for her time on probation. The Court therefore imposed an additional punishment of thirty days. Ms. Pryer then moved for release pending appeal, which the Court denied. The Court explained that it would elaborate on its reasoning for each of these actions in a written opinion.

## II.   LEGAL STANDARDS

Section 3564(c) establishes a framework for deciding motions for early termination of probation. It provides:

> The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor . . . if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

18 U.S.C. § 3564(c). Therefore, as in the case of the parallel early termination of supervised release statute,[4] § 3564(c) permits a court to terminate a term of probation early only if the following three requirements are met: (1) early termination is warranted by "the interest of justice;" (2) early termination is warranted by "the conduct of the defendant;" and (3) early

---

a § 2255 motion based on the D.C. Circuit's decision in *Little*." Gov. Obj. to R&R 16 n.9, ECF No. 90. And the Court made clear that it would "proceed with revocation proceedings, absent defendant's filing of some other motion for relief pursuant to 28 U.S.C. § 2255." *Pryer*, 2024 WL 404378, at *1.

[4] *See* 18 U.S.C. § 3583(e)(1) ("The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]").

termination would be consistent with the applicable § 3553(a) factors. *See United States v. Harrison*, No. 98-cr-235-5 (RCL), 2021 WL 1820289, at *3 (D.D.C. May 6, 2021) (observing that 18 U.S.C. § 3582(e)(1) "allows courts to terminate a term of supervised release early when two conditions [concerning the interest of justice and the defendant's conduct] have been met and when certain enumerated factors set forth in 18 U.S.C. § 3553(a) support the early termination." (citing *United States v. Mathis-Gardner*, 783 F.3d 1286, 1287 (D.C. Cir. 2015)); *see also United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999) ("The conjunction 'and' used in the statute . . . clearly indicates that a district court must conclude that the early termination of supervised release is warranted *both* by the individual's conduct and also by the interest of justice.") (emphasis added).

### III.  DISCUSSION

The Court will first discuss its reasons for denying Ms. Pryer's motion for early termination of probation. It will then explain why the sentence it imposed today complies with double jeopardy. Finally, it will elaborate on why it denied Ms. Pryer's motion for release pending appeal.

**A. The Court Will Deny Ms. Pryer's Motion for Early Termination of Probation**

The Court will not award Ms. Pryer early termination of probation under 18 U.S.C. § 3564(c). Even assuming that the alleged illegality of a sentence is an appropriate basis for a motion for early termination,[5] Ms. Pryer has not and cannot establish her entitlement under the statutory factors. Even if the interest of justice warrants early termination, early termination is neither warranted by the defendant's conduct nor consistent with the § 3553(a) factors.

---

[5] In *United States v. Lussier*, the Second Circuit held that a court may not modify a condition of supervised release under 18 U.S.C. § 3583(e)(2) on the basis that the condition is illegal. *See United States v. Lussier*, 104 F.3d 32, 34 (2d Cir. 1997). The *Lussier* Court reached this conclusion because § 3583(e)(2) does not list the legality of a condition as a relevant consideration and because using § 3583(e)(2) to attack the legality of a sentence would be "inconsistent with the scheme of appellate and collateral review established by the Sentencing Reform Act of 1984." *Id.* at 35–37. Similar reasoning might support an argument that § 3564(c) may not be used to attack the legality of a sentence. But the Court will not decide this question now, because even if § 3564(c) applies, early termination is clearly not warranted on the facts of this case.

### 1. The Defendant's Conduct Does Not Warrant Early Termination

Ms. Pryer has not established that her conduct warrants early termination because she has not shown changed circumstances or exceptionally good behavior. Instead, she concedes that she has violated her conditions.

As this Court recently explained in *United States v. Rader*, No. 1:22-cr-57 (RCL), 2024 WL 474535 (D.D.C. Feb. 7, 2024), courts have typically held that defendants seeking early termination under § 3564(c) must demonstrate more than just compliance with the terms of probation. *See, e.g.*, *United States v. Payne*, No. 1:17-cr-142, 2020 WL 2813438, at *1 (E.D. Tex. May 29, 2020) ("Courts have routinely found that 'mere compliance with the conditions of probation' does not warrant early termination of a probation term, as such behavior is required by law." (quoting *United States v. Salazar*, 693 F. App'x 565, 566 (9th Cir. 2017)); *United States v. Ferrell*, 234 F. Supp. 3d 61, 64 (D.D.C. 2017) (finding early termination not warranted by the conduct of the defendant despite her good behavior and compliance with the terms of probation); *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("Early termination is not warranted where a defendant did nothing more than that which he was required to do by law."); *United States v. Paterno*, No. 99-cr-0037, 2002 WL 1065682, at *3 (D.N.J. Apr. 30, 2002) ("Merely complying with the terms of his probation and abiding by the law are not in and of themselves sufficient to warrant early termination of probation; rather, that is simply what is expected of Defendant.").

Instead, "[e]arly termination is typically granted only upon a showing of new or changed circumstances not contemplated during sentencing, 'such as exceptionally good behavior.'" *Payne*, No. 2020 WL 2813438, at *1 (quoting *United States v. Smith*, No. 3:10-cr-53, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014)); *see also United States v. Hilton*, No. 13-cr-172, 2014 WL

3728176, at *3 (N.D. Cal. July 28, 2014) (concluding that the defendant "has failed to demonstrate 'exceptionally good behavior' or other changed circumstances that would render the three-year probation term either too harsh or inappropriately tailored to serve general punishment goals.") (citing *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000)).

Ms. Pryer has failed to demonstrate, or even allege, changed circumstances such as exceptionally good behavior. Indeed, she has *conceded* violations. She argues instead that her violations are irrelevant because she should not have received both prison and probation to begin with. *See* Def. Reply 11–12 ("[W]ith probation a nullity, the alleged violations should have no bearing on whether this Court should terminate probation in the interests of justice."). But as the Court has said before in this case, "the assumption that an illegal sentence must be treated as void contradicts well-established law." *Pryer*, 2024 WL 404378, at *8. "Once a district court imposes a final criminal sentence, it has no authority to alter that sentence except in a manner permitted by statute or the Federal Rules of Criminal Procedure." *Id.* at *3. Ms. Pryer has not sought to challenge her sentence through direct appeal, a 28 U.S.C. § 2255 motion, or any other appropriate means. Therefore, her term of probation cannot be treated as a "nullity." Def. Reply 11–12. And even if the Court disregarded Ms. Pryer's probation violations, that would not change the fact that she has failed to show early termination "is warranted by the conduct of the defendant." 18 U.S.C. § 3564(c). The Court therefore cannot grant her motion.

**2. The § 3353(a) Factors Strongly Weigh Against Early Termination**

Terminating Ms. Pryer's probation early would be inconsistent with the applicable factors set forth in § 3553(a).

Section 3553(a) directs a court to "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing, including:

9

> **(a)(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> . . . .

18 U.S.C. § 3553(a).

Terminating Ms. Pryer's probation early would impede many of the aims articulated by Congress in § 3553(a). In particular, granting early termination to a defendant who has violated eleven separate conditions of probation would not "promote respect for the law," and would instead undermine "adequate deterrence to criminal conduct." *See* § 3553(a)(2)(A)–(B). It would send a message that the conditions of probation are optional and can be ignored without consequence. It would also signal to the many defendants who have faithfully adhered to their conditions of probation that they were suckers for doing so. Ms. Pryer's conduct also reflects such a deep disrespect for the law and public safety that early termination would fail to "to protect the public from further crimes of the defendant." § 3553(a)(2)(C).

Early termination would also detract from the sentence's ability to "reflect the seriousness of" and "provide just punishment for" Ms. Pryer's offense, since early termination would prevent Ms. Pryer from completing the punishment the Court deemed appropriate when imposing her sentence. *See* § 3553(a)(2)(A). Finally, granting early termination to a defendant who has refused to pay restitution as ordered would effectively excuse her from this requirement, and would encourage other January 6 defendants to also ignore this obligation, thus undermining "the need to provide restitution to any victims of the offense." § 3553(a)(7).

The § 3553(a) factors therefore counsel strongly against early termination.

### 3. Even If the Interest of Justice Favors Early Termination, That Is Not Enough

Even if the interest of justice supports terminating Ms. Pryer's probation so that she does not have to finish serving an illegal sentence, that factor alone cannot justify early termination under § 3564(c).

Whether the interest of justice supports early termination is no easy question. Ms. Pryer argues that the interest of justice supports early termination because that would release her from the kind of split sentence held illegal under *Little*. *See* Def. Reply 2. But different considerations may point in the other direction. The "interest of justice" phrase "does give the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period," *Pregent*, 190 F.3d at 283, or in this case, probation period. The interest of justice might arguably *disfavor* early termination because that would result in the defendant ultimately receiving an amount of punishment less than what the Court initially found appropriate under the § 3553(a) factors. Had the Court foreseen the D.C. Circuit's decision in *Little* at the time it sentenced Ms. Pryer, it would not have imposed a sentence of the same format, but it might have imposed a sentence of equivalent or greater punishment. One might also argue that the interest of justice would not be served by permitting a defendant to circumvent the established statutory scheme for challenging illegal sentences through direct appeal, 18 U.S.C. § 3742, or collateral attack, 28 U.S.C. § 2255. *Cf. Pryer*, 2024 WL 404378, at *3–8 (discussing the limited ways in which a defendant may challenge a sentence as illegal).

In any event, the Court need not decide how the interest of justice bears on this case. The text of § 3564(c) makes clear that early termination must be warranted by *both* the interest of justice *and* the conduct of the defendant, and must be informed by § 3553(a) factors. So even if

11

the interest of justice supports early termination, that factor alone cannot suffice to grant Ms. Pryer's motion.

### B. To Comply With Double Jeopardy Principles, the Court Will Give Ms. Pryer Credit Against Her New Sentence of Imprisonment

Today, the Court ordered that Ms. Pryer be committed to the custody of the Bureau of Prisons for a term of 156 days, with credit for eighty-one days already served in prison and credit for a further forty-five days that reflects the fourteen months she spent on probation.

As the Court concluded in a recent opinion, "[p]rinciples of double jeopardy do not prohibit the Court from imposing an additional term of imprisonment or probation when it resentences [a split-sentence defendant], as long as it credits the time already served in prison or probation against any new punishment." *Little*, 2024 WL 181260, at *4. The Court explained that "[c]rediting time ensures the defendant's punishment does not exceed the maximum prescribed by the legislature, which would violate" double jeopardy principles under *Ex Parte Lange*, 85 U.S. 163 (1873). *Id.* at *6 (citing *United States v. Fogel*, 829 F.2d 77, 86–87 (D.C. Cir. 1987)).

Ms. Pryer is certainly entitled to credit on a one-to-one basis for the time she has spent incarcerated, including both the forty-five days of her original sentence and the thirty-six days stemming from her warrant. Calculating the amount of credit Ms. Pryer should receive for her fourteen months on probation is more complicated. At the February 15, 2024 status conference, the government argued that Ms. Pryer should receive thirty days' credit. Ms. Pryer objected that the government's number did not specifically credit the time spent on home incarceration and detention, and argued that the Court cannot credit probation toward imprisonment at all.

Although the case law does not provide any ready formula for converting time spent on probation to prison time, in a prior opinion this Court summarized the applicable principles. *See Little*, 2024 WL 181260, at *6 (citing *United States v. Martin*, 363 F.3d 25, 39 (1st Cir. 2004)).

12

According to those principles, in arriving at an "appropriate, fact-sensitive ratio" between the approximately fourteen months Ms. Pryer has spent on probation and the amount of prison time for which she will receive credit, the Court will consider both the specific conditions of Ms. Pryer's probation and the effect of a sentence reduction on the § 3553(a) factors.

### 1. The Specific Conditions of Ms. Pryer's Probation

In light of Ms. Pryer's experience on probation, her fourteen months on probation should count for forty-five days' credit toward her new sentence of incarceration.

In determining how much credit to give for time spent on probation, a central consideration is the extent to which the defendant actually served the sentence of probation imposed by the Court. In *Little*, this Court determined that a defendant who spent eighteen months on probation, but "spent essentially no time in compliance with the terms and conditions of his probation" because he failed to pay his restitution should receive credit toward his new prison sentence of only one month. *See United States v. Little* (*Little Notes for Resentencing*), No. 1:21-cr-315 (RCL), 2024 WL 386718, at *1 (D.D.C. Jan. 25, 2024).

The story of Ms. Pryer's time on probation is more nuanced, but ultimately entitles her to forty-five days' credit. On the one hand, Ms. Pryer has been far less compliant with her conditions than was Mr. Little. The Probation Office has alleged, and Ms. Pryer does not contest, that she violated *eleven* separate conditions of probation, some of them numerous times. Ms. Pryer's willful defiance of her obligations profoundly frustrated the "two primary goals of probation—rehabilitation and protecting society from future criminal violations." *United States v. Knights*, 534 U.S. 112, 113 (2001). Standing alone, her failure to serve the sentence of probation ordered by the Court would suggest she deserves virtually no credit.

...

On the other hand, the Court must take into account the period Ms. Pryer was on home detention. She spent thirty days at an inpatient facility. *See* 2d Amend. Order 1 & n.2; Min. Entry (July 5, 2023). From July 5 until September 1, she was to some extent limited to her home, enforced by location monitoring. She apparently continued to remain at home until on or about November 8, when she changed her residence without notifying her probation officer. Dec. 18, 2023 Probation Pet. 3. Ms. Pryer therefore experienced a fairly significant deprivation of her liberty, particularly for the one month in which she was limited to the unfamiliar surroundings of an inpatient treatment center. *See Knights*, 534 U.S. at 119 ("Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)).

Nonetheless, the time Ms. Pryer spent on home detention does not warrant credit on a one-to-one ratio. "[C]ustodial sentences are qualitatively more severe than probationary sentences of equivalent terms." *Gall v. United States*, 552 U.S. 38, 48 (2007). Indeed, time spent on home detention is far less onerous than time spent behind bars. Congress recognized as much in ordaining home detention as an "alternative to incarceration." *See* 18 U.S.C. § 3563(b)(19); *see also United States v. Hager*, 288 F.3d 136, 139 (4th Cir. 2002) ("Congress either declined to equate the familiar confines of home with the unfamiliar surroundings of a prison setting or decided that being required to stay at home, even for a period of months, is not the same as being required to serve time in a penal institution. In view of this statutory directive that home confinement and incarceration are 'alternatives,' the courts are simply not permitted to assume an equivalence.").

The upshot is that although Ms. Pryer frequently, flagrantly violated her conditions of probation, she also experienced restrictions on her liberty that, although far less serious than

incarceration, were nonetheless significant. In the Court's view, the punishment incurred by Ms. Pryer on probation was equivalent to forty-five days in prison.

### 2. The § 3553(a) Factors

Granting Ms. Pryer forty-five days' credit for her time on probation would also accord with the § 3553(a) factors.

In resentencing a defendant, a court should consider "the effect of a sentence reduction on the underlying purposes of the Guidelines as set out in 18 U.S.C. § 3553(a)." *Little*, 2024 WL 181260, at *6 (alternation in original) (quoting *Martin*, 363 F.3d at 39). That ensures that the defendant's punishment is appropriate under § 3553(a), which directs a court to "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing set out in that subsection.

Too great a sentence reduction for a defendant who has willfully violated numerous conditions would result in a sentence inconsistent with § 3553(a), in particular "the need for the sentence imposed" (A) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) "to afford adequate deterrence to criminal conduct;" and (C) "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). Yet too slight a reduction would also be inappropriate. Since Ms. Pryer has already served time in home detention, she has already served part of the just punishment for the offense and has already experienced part of the appropriate deterrent. If the Court did not give her enough credit for her time on probation, she would receive a greater punishment than if she had been correctly sentenced in the first place. The Court is satisfied that forty-five days' credit strikes an appropriate balance.

### C. Ms. Pryer Does Not Meet the Requirements for Release Pending Appeal

The Court denied Ms. Pryer's motion for release pending appeal because the Court cannot find by clear and convincing evidence that Ms. Pryer is not likely to flee or pose a danger to the safety of any other person or the community if released on personal recognizance or conditions.

Under 18 U.S.C. § 3143(b)(1), the court must order a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal, to be detained, unless the court finds (A) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" on personal recognizance or conditions *and* (B) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in— (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *See* 18 U.S.C. § 3143(b)(1). "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c).

The second prong is met here. In *United States v. Little*, the defendant moved for release pending appeal based on the argument that double jeopardy prohibits imposing additional punishment for a defendant who initially received the kind of split sentence the D.C. Circuit declared unlawful in its *Little* decision. The Circuit granted his motion after determining that he "present[ed] a substantial question of law or fact likely to result in a reduced term of imprisonment that is less than the amount of time already served plus the expected duration of the appeal process." *United States v. Little*, No. 24-3011 (D.C. Cir. appeal docketed Jan. 31, 2024), Doc. No. 2041724. It is therefore clear that this prong is satisfied.

However, the other prong of § 3143(b) is not met here.  In *Little*, it was undisputed that upon release the defendant would not pose a flight risk or a risk to the safety of the community. The facts of this case are very different and Ms. Pryer has not met her burden as to either aspect of this prong.

She has not shown by clear and convincing evidence that she is not likely to flee.  In fact, she has already fled before.  She failed to self-surrender to begin serving her initial forty-five day prison sentence, leading Judge Pan to issue a warrant for her arrest.  *See* Sealed Min. Order (Nov. 7, 2022).  In addition, the Probation Office has reported that on or about November 8, 2023 Ms. Pryer failed to notify her probation officer of a change in residence and that "after multiple unsuccessful attempts by [the Probation Office] to contact Mr. Pryer in addition to failing to make herself available for supervision, her whereabouts are reported as unknown."  Dec. 18, 2023 Probation Pet. 3.

Nor has Ms. Pryer shown by clear and convincing evidence that she is not likely to pose a danger to the safety of any other person or the community if released on conditions.  True, there is no evidence that she has been violent.  However, she has engaged in other forms of dangerous conduct.  According to the Probation Office, on at least four occasions she drove a motor vehicle without a valid driver's license.  *See* Apr. 14, 2023 Sealed Probation Pet. 2.  Even more concerning is her frequently documented use of controlled substances, including methamphetamine and fentanyl.  On August 11, 2023, Ms. Pryer pleaded guilty in Greene County, Missouri state court to driving while intoxicated and leaving the scene of an accident.  *See* Case No. 2131-CR03984. And on April 28, 2022, Ms. Pryer pleaded guilty in Greene County, Missouri state court to the felony offense of endangering the welfare of a child involving drugs.  *See* Case No. 1931-CR00865-01.  The Court therefore has serious concern that if Ms. Pryer were released pending

17

appeal, she would pose a clear and present danger to public safety. And given that Ms. Pryer concedes that she has violated numerous conditions while on probation, the Court doubts the ability of conditions of release to effectively constrain her behavior if she were released pending appeal.

The Court therefore cannot find by clear and convincing evidence that Ms. Pryer is unlikely to flee or pose a danger to public safety if released on personal recognizance or conditions. The Court accordingly denied her motion.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Ms. Pryer's motion for early termination of probation must be **DENIED**. The Court also concludes that upon revocation of Ms. Pryer's probation, a sentence of 156 days, with credit for eight-one days of incarceration and forty-five days that reflects the fourteen months she spent on probation, is permitted by law and warranted by the facts of this case. Finally, the Court determines that Pryer's motion for release pending appeal must also be **DENIED**. As the Court stated at the final revocation hearing, Ms. Pryer is permitted to self-surrender after June 1, 2024.

Date: 3/11/24

Royce C. Lamberth
United States District Judge